IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:23-CV-00004-RJC-SCR

| | |
|---|---|
| DAVID WORRELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| PECO INSURANCE LLC, et al. ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on "Capital Premium's Motion to Dismiss Pursuant to Rule 12(b)(6) or Alternatively for Summary Judgment," (Doc. No. 7), and pro se Plaintiff's Response Motion in Opposition. (Doc. No. 17). On June 18, 2024, the Court issued an "Order to Show Cause" (Doc. No. 31) requiring Plaintiff to file a response on or before July 18, 2024, showing the existence of subject-matter jurisdiction or file an amended complaint stating the basis for subject-matter jurisdiction. Plaintiff has not responded or filed an amended complaint, and the time for responding has expired. The undersigned respectfully recommends this matter be dismissed for lack of subject-matter jurisdiction, as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff brings an action under North Carolina state law alleging breach of contract, breach of good faith and fair dealing, and violation of North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), N.C. Gen. Stat. § 75-1. (Compl., Doc. No. 1 ¶¶ 19-36). Accepting the

facts alleged in the Complaint[1] as true for the purpose of evaluating this Motion to Dismiss, on June 2, 2021, Plaintiff David Worrell, a citizen of Georgia, purchased an insurance policy held by Defendant Progressive Mountain Insurance Co. ("Progressive"). Id. ¶ 10. This insurance plan had a policy premium of $21,842.00. Id. On January 4, 2022, Plaintiff was offered "a seemingly lower premium" by another insurance provider, Defendant Peco Insurance, LLC ("Peco") totaling $16,604.37. Id. ¶ 11. During the process of switching insurance providers, Plaintiff paid $734.75 in interest to Defendant Capital Premium Financing, LLC ("Capital"), a premium financing company that Plaintiff categorizes as "engaged in the insurance business. Id. ¶ 4, 11.

Plaintiff asserts individual Defendants Julio Batista ("Batista") and Dianelys Zamora ("Zamora"), whom he communicated with about his insurance needs, were at all times agents or employees of Defendants Peco, Cover Whale, Progressive, and Capital.[2] Id. ¶ 8, 9.

On January 6, 2022, Batista sent a request to Defendant Cover Whale, an insurance provider, that a video camera be installed in Plaintiff's truck.[3] Id. ¶ 12. Plaintiff installed the camera after Cover Whale threatened to cancel his insurance policy. Id. Plaintiff's truck became inoperable in May 2022, however, he "continued to make timely payments on [the] premium." Id. ¶ 13.

On or about October 6, 2022, Plaintiff requested to insure another truck. Id. ¶ 14. Defendants[4] agreed, but contingent on a camera being installed in Plaintiff's "2000 International truck." Id. Plaintiff continued to pay premiums and installed the camera. Id. Zamora informed

---

[1] The Court observes Plaintiff's Complaint is not a model of clarity, but has liberally construed its allegations as required for pro se filed complaints.
[2] Plaintiff does not allege and the record does not reveal the job roles or duties of Defendants Batista or Zamora.
[3] Plaintiff may have meant to state Batista sent a request from Cover Whale to Plaintiff that a video camera be installed in his truck, but that is not what is stated in the record. Based on the timeline in the Complaint it appears Plaintiff switched from Progressive to Cover Whale through Peco, which may be the insurance broker.
[4] Plaintiff does not explicitly identify which Defendants, but indicates Zamora informed Plaintiff that Progressive was the only insurance company that would insure the 2000 International truck. Id. ¶ 14.

Plaintiff that Progressive was the only insurance company that would insure the 2000 International truck. Id.

"On or about October 13, 2022, Zamora requested that [P]laintiff pay $2,900 down on a new premium with Progressive," which Plaintiff paid. Id. ¶ 15. Plaintiff's coverage lapsed when Peco "canceled one policy prior to ensuring coverage was continuous." Id. "This error caused thousands of dollars in loss" for Plaintiff, but Plaintiff does not further elaborate. Id.

On or about December 1, 2022, Plaintiff obtained an insurance policy through Canal Insurance. Id. ¶ 16. The Canal policy "required a downpayment of $1,659.00" and "monthly payments of $1,412.79." Id.

Plaintiff alleges the insurance policies between himself and Defendants were breached when defendants "failed to find insurance which was tailored to his needs" and failed "to perform other obligations it owed Plaintiff under the Commercial Auto Policies." Id. ¶¶ 20, 22. In addition, Plaintiff alleges Defendants breached the implied covenant of good faith by "engaging in conduct calculated to further its own economic interests at the expense of the Plaintiff." Id. ¶ 27. Lastly, Plaintiff alleges Defendants violated UDTPA by deceptively handling his insurance needs, utilizing a "referral service who steer consumers to insurance companies" which forced him "to accept coverages that did not apply to his company's individual needs." Id. ¶ 32.

Plaintiff asserts this Court has subject matter jurisdiction because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.[5] Id. ¶ 1-2. Plaintiff further asserts "a substantial portion of the events forming the basis of this suit occurred in this District" and each Defendant resides or regularly conducts business in North Carolina.[6] Id. ¶ 3, 5-7.

---

[5] The record does not indicate the amount in controversy plausibly exceeds $75,000.
[6] Defendants do not raise whether venue is proper pursuant to 28 U.S.C. § 1391. Plaintiff does not allege and the record does not reflect what "substantial portion of the events" occurred in the Western District of North Carolina.

Plaintiff seeks general and special damages "in an amount in excess of policy limits"[7] "punitive damages in an amount to be determined at trial;" "for reasonable costs of suit;" and "for interest at the statutory rate." Id. at 6-7. Defendant Capital seeks dismissal under 12(b)(6) for failure to state a claim, and, in the alternative, for summary judgment.

The Motion has been fully briefed and is ripe for determination.

## I.     DISCUSSION

"The existence of subject matter jurisdiction is a threshold issue, which this court must address before addressing the merits of [Plaintiff's] claim[s]." Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The United States Courts are courts of limited jurisdiction and "may only exercise that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

Subject-matter jurisdiction is so limited, in fact, that federal "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (citations omitted). "No party can waive the defect, or consent to [subject-matter] jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." Wis. Dept. of Corr. v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted). See also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1945 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.") (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006); U.S. v. Cotton, 535 U.S. 625, 630 (2002)).

---

[7] Plaintiff does not identify the policy limits in his Complaint.

Under 28 U.S.C. § 1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Additionally, a federal court has supplemental jurisdiction over "all other claims that are so related to [federal] claims in the action. . . that they form part of the same case or controversy. . . ." 28 U.S.C. § 1367(a). Here, Plaintiff has not alleged a federal claim. Instead, Plaintiff's claims expressly arise under state law.

The Court now examines whether there is a basis to conclude that the exercise of federal diversity of citizenship jurisdiction is appropriate. Generally, a case falls within a district court's diversity jurisdiction only if diversity of citizenship among the parties is complete – that is, only if no plaintiff and defendant are citizens of the same State – <u>and</u> the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); <u>Carden v. Arkoma Assocs.</u>, 494 U.S. 185, 187 (1990); <u>Strawbridge v. Curtiss</u>, 7 U.S. (3 Cranch) 267 (1806); <u>Conlon v. Barber</u>, No. 5:23-CV-00040, 2024 WL 233240, at *5 (W.D. Va. Jan. 22, 2024) (citing <u>Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC</u>, 636 F.3d 101, 103 (4th Cir. 2011)).

"The party asserting federal jurisdiction bears the burden of establishing federal jurisdiction." <u>Hall v. Bank of Am. Corp.</u>, No. 3:18-CV-108-RJC-DSC, 2019 WL 215617, at *3 (W.D.N.C. Jan. 16, 2019), <u>aff'd</u>, 765 F. App'x 33 (4th Cir. 2019) (citing <u>Mulcahey v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994)). In his Complaint, Plaintiff states he is a Georgia citizen and that Defendants reside, or have principal places of business, in other states. (Doc. No. 1 ¶¶ 5-7). For diversity jurisdiction to exist, "the citizenship of every plaintiff must be different from the citizenship of every defendant." <u>Cent. W. Va. Energy Co.</u>, 636 F.3d at 103 (citations omitted). Defendants do not dispute that there is complete diversity of citizenship.

Despite Plaintiff's claim for damages "in an amount in excess of policy limits," the Court is unable to conclude that more than $75,000 is actually in controversy. Plaintiff asserts

Defendants steered him to repeatedly switch insurance carriers in order to obtain large down payments. (Doc. No 1. ¶ 17.) Plaintiff references policy premiums offered by Progressive and Peco along with an interest payment of Capital. Id. ¶¶ 10-11. Plaintiff refers to two down payments, $2,900 paid October 2022 and $1,659 paid December 2022. Id. ¶¶ 15-17. Plaintiff also asserts Defendants erred in canceling one insurance policy before ensuring coverage was continuous resulting in a lapse in coverage which "caused thousands of dollars in loss" but fails to elaborate or provide a dollar amount. Id. ¶ 15, 17. Even if Plaintiff were entitled to treble damages under the UDTPA or punitive damages, he would have to plausibly allege damages in the Complaint that would lead the Court to conclude more than $75,000 is actually in controversy.[8]

At this point in the proceedings and on the present record, it appears with legal certainty that Plaintiff's claim is less than the amount necessary to convey jurisdiction. See Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).

Mindful that Plaintiff is pro se, the Court gave Plaintiff another opportunity to show why subject-matter jurisdiction exists in this matter. (Doc. No. 21). The Court also reminded Plaintiff that he may opt to file an Amended Complaint to include allegations addressing why this Court has subject-matter jurisdiction. Id. The Court warned Plaintiff that if subject-matter jurisdiction is not established, the lawsuit would be subject to dismissal. Id. Unfortunately, Plaintiff did not respond to the Court's Show Cause Order concerning subject-matter jurisdiction.[9]

Therefore, having inquired into the matter, the undersigned respectfully recommends that

---

[8] Additionally, Plaintiff clarifies the insurance policies at issue were purchased for his company. Id. ¶ 32. If that is the case, there also may be an issue of standing and a pro se individual cannot represent a corporation. However, since the Court finds there is no subject matter jurisdiction, the Court will not further opine on these issues.

[9] This Court previously issued a Show Cause Order (Doc. No. 29) requiring a response to a separate Motion to Dismiss, and Plaintiff submitted a timely response. (Doc. No. 30).

the Complaint be dismissed without prejudice for lack of subject-matter jurisdiction. Given that the Court concludes it does not presently have jurisdiction over this matter, the undersigned will not further address the merits of this matter. Accordingly, the undersigned recommends denying Defendant's Motion to Dismiss (Doc. No. 7) as moot without prejudice.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's Complaint be **DISMISSED** without prejudice for lack of subject-matter jurisdiction, and that Defendant's Motion to Dismiss (Doc. No. 7) be **DENIED** as moot without prejudice.

### IV. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting U.S. v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**SO ORDERED AND RECOMMENDED**.

Signed: July 31, 2024

Susan C. Rodriguez
United States Magistrate Judge